UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case No. 09-64977-wsd
 Chapter 7
WANDA FALLS,  HON. WALTER SHAPERO

Debtor.
_____/

## OPINION IN CONNECTION WITH ROBERT STEIN'S FEE APPLICATION

Robert Stein ("Applicant") represented this same Debtor in a prior chapter 13 case (09-4855), which was filed on February 29, 2009, and dismissed on August 6, 2009, prior to confirmation. In that case, the filed 2016(b) statement shows an agreed flat fee of $3,000.00 of which $726.00 had been paid. Applicant later applied for a fee of $4,000.00 in that case, to which the trustee objected. No hearing was ever held and no order was ever entered relative to that application in that case. Applicant testified he received nothing other than the $726.00 in respect to fees in that case.

This case was commenced as a chapter 13 case on August 11, 2009, and was converted to a chapter 7 case on January 24, 2010. The 2016(b) statement in this case is similar in form to that in the prior case except that it calls for a flat fee of $3,500.00. Stein has now applied for a fee of $4,975.00 in this case. The U.S. Trustee objects, arguing that no fees should be allowed.

Comparing the content of the schedules, plans and other documents filed in connection with the previous case with those in this case, one must conclude that (l) there were minimal differences in the plans, and what there were, were in part occasioned by the differences in attorney fees; (2) there were small changes in the liquidation analysis; and work sheet (3) a small change in Schedules D and I; (4) and one additon (current year's earnings) to the SOFA. In light of such, one must

1

question the justification of charging a larger basic fee in this, a subsequent case that was filed soon after the prior one was dismissed.

Debtor, though a teacher with some prospect of continuous income, nevertheless had serious chapter 13 plan issues arising out of the fact that living in her household were not only her own dependent children, but also her boyfriend and his dependent children, and possibly others - all of whom Debtor was either supporting in whole or in major part out of her income. Applicant's advice in connection with those facts was apparently to ignore them in the formulation of a plan. That advice in light of the Trustee's objections to the plan inevitably led to the conclusion that chapter 7 was more appropriate for this Debtor, and possibly should have been in the first place. There was also evidence that Debtor suffered a plumbing emergency in her home which had to be dealt with promptly relative to obtaining funds to deal with it (by way of excusing ongoing plan payments or in some other fashion) and Applicant was not able or in a position to respond and act as quickly as the circumstances required.

The further evidence is that (1) Applicant, essentially a solo practitioner, was ill and consequently rarely came into the office or worked at home during the first three (and most critical) months of this case from August to November 2009 (the fee application covers services from August 11, 2009, to January 24, 2010), and thereafter he came into the office on a very limited basis; (2) His "office" in fact was a space sharing arrangement with a firm, where his phone was answered, and messages taken, but in his absence no one else did, or was available to, work on any of his cases; (3) Between November 2009 and February 2010, he worked very reduced hours; (4). All of the work done was charged at a $250.00 per hour rate, and none was performed by secretarial or paralegal personnel; (5) Debtor credibly testified that she supplied a documents and items that were supposed

2

to be given to the chapter 13 Trustee, but such was either not timely or never delivered, and unnecessarily involved repeated calls, meetings, and hearings and adjournments. Debtor argues that very little if any of what Applicant did, benefitted her because her prior chapter 13 case was dismissed and this one was converted to a chapter 7 case, and (6) In the present case, the U.S. Trustee had filed a 707 motion that eventually, in part at least, led to the conversion of the case.

As noted, the fee agreement in this case provides for a flat fee of $3,500.00. Paragraph 5, thereof, says that basic fee does not include a number of specifically enumerated items. In answer to the Court's questioning on those items during the hearing, Stein responded that none of those excepted specifically enumerated items were present in this case, yet the application is for $4,975.00.

In sum, as the Court views it, the primary problems in this case were that (1) Applicant's medical problems were such as precluded him from giving this case the ongoing attention that it required, and, (2) apparently Applicant's office set-up was such that he was not readily or otherwise able to call upon, or utilize, the services of other sufficiently skilled persons to properly and timely service at least this client and her case. The Rules of Professional Responsibility mandate an attorney's withdrawal from representation where the attorney's physical condition materially impairs his ability to represent the client. This may have been one of those instances. But, regardless of whether or not it was, taking into account the various non-exclusive factors which 11 U.S.C. 330 provides are relevant to determination of compensation of a professional, the Court concludes (taking into account the total circumstances of both cases), that the appropriate award for services in this case is $1,000.00.

3

09-64977-wsd    Doc 83    Filed 08/19/10    Entered 08/19/10 13:26:31    Page 3 of 4

**Signed on August 19, 2010**

/s/ Walter Shapero
**Walter Shapero
United States Bankruptcy Judge**